UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Luis Tejado-Hurtado,

        Petitioner,                              Case No. 21-cv-2766 (JRT/LIB)

v.

                                       **REPORT AND RECOMMENDATION**

J. Fikes,

        Respondent.

This matter comes before the undersigned United States Magistrate Judge, pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, upon Petitioner Luis Tejado-Hurtado's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. [Docket No. 1].

For the reasons discussed herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED as moot**.

**I.    Background**

On July 20, 2016, Petitioner pled guilty to one count of Conspiracy to Distribute Methamphetamine. United States v. Tejeda-Hurtado, No. 14-cr-103 (LJO/SKO) (1), Change of Plea Hearing [Docket No. 149] (E.D.Ca. July 20, 2016). On November 21, 2016, Petitioner was sentenced to a 108-month term of incarceration to be followed by a 36-month term of supervised release. United States v. Tejeda-Hurtado, No. 14-cr-103 (LJO/SKO) (1), Sentencing Minutes [Docket No. 171] (E.D.Ca. Nov. 21, 2016).

On October 18, 2018, while Petitioner was incarcerated at the Federal Prison Camp in Yankton, South Dakota (hereinafter "FPC Yankton"), Petitioner received Incident Report

3182407 charging him with "a violation [of] code 108: possessing a hazardous tool," specifically a cellular telephone. (Pet. [Docket No. 1] at 2). After Petitioner admitted to the charged violation, he received the following sanctions: the loss of 41 days of good time credit, 180 days of nonvested good time credit, 180 days of commissary privileges, 180 days of phone privileges, 180 days of visiting privileges, and 90 days of personal property privileges. (Id.).

On December 27, 2021, Petitioner initiated the present action in this Court by filing his Petition. [Docket No. 1]. At the time Petitioner initiated this action, he was serving his term of incarceration at the Federal Correctional Institute at Sandstone, Minnesota (hereinafter "FCI Sandstone"). (See, Pet. [Docket No. 1]). Petitioner initiated this action to challenge disciplinary sanctions imposed upon him while he was in the custody of the Bureau of Prisons at FPC Yankton.

On January 19, 2022, Petitioner was released from the custody of the Bureau of Prisons. (Anderl Decl. [Docket No. 8] ¶ 4; https://www.bop.gov/inmateloc (searching Petitioner's inmate number 71508-097)).[1] Upon his release from BOP custody, Petitioner began his term of supervised release. (See, Exhibit A [Docket No. 8-1] at 2).

**II.   Discussion**

Petitioner seeks an Order of this Court restoring 41 days of good time credit and 180 days of nonvested good time credit he forfeited as a sanction following his admitting to the conduct alleged in Incident Report 3182407. (Pet. [Docket No. 1] at 18). In support of this request, Petitioner contends that sanctioning him with the forfeiture of 41 days of good time credit and

---

[1] See, Kratville v. Warden of Fed. Prison Camp-Duluth, Minnesota, No. 17-cv-5209 (MJD/TNL), 2018 WL 6182593, at *1 (D. Minn. Aug. 31, 2018) (taking judicial notice of Federal Inmate Locator), report and recommendation adopted, 2018 WL 6179512 (D. Minn. Nov. 27, 2018); Beck v. Samuels, No. 15-cv-2635 (WMW/SER), 2016 WL 4004573, at *2 (D. Minn. June 28, 2016) (same), report and recommendation adopted, 2016 WL 4005658 (D. Minn. July 25, 2016); Skrzypek v. Roal, No. 11-cv-933 (ADM/SER), 2011 WL 5833661, at *2 n.3 (D. Minn. Oct. 12, 2011) (same), report and recommendation adopted, 2011 WL 5593146 (D. Minn. Nov. 17, 2011); Ly v. Fisher, No. 10-cv-2946 (MJD/SER), 2011 WL 2373449, at *1 n.3 (D. Minn. May 11, 2011) (same), report and recommendation adopted, 2011 WL 2373151 (D. Minn. June 10, 2011).

180 days of nonvested good time credit is a disparate sanction when compared to the sanctions imposed on "similarly situated inmates of African American decent." (Id. at 5).[2] Petitioner does not challenge his "guilt of possessing the cell phone" or the other sanctions imposed upon him. (Id.).

For relief, Petitioner asks the Court to "expunge the code 108 infraction"; restore the 41 days of good time credit he forfeited as a sanction for said infraction; and restore the 180 days of nonvested good time credit he forfeited. (Id. at 18). Petitioner requests that if his Petition is decided in his favor after his release from BOP custody, then his restored time be "taken off his halfway house time and/or supervised release" at a rate of "2 days off for 1 day credit." (Id.).

Before the Court considers the underlying merits of the present Petition, the Court must first, in light of Petitioner's release from BOP custody, ensure that the present Petition has not become moot since the time Petitioner filed his Writ of Habeas Corpus, [Docket No. 1], with this Court.

Article III of the United States Constitution allows Federal Courts to adjudicate only actual, ongoing cases or controversies. See, Am. United for Separation of Church and State v. Prison Fellowship Ministries, 509 F.3d 406, 420–21 (8th Cir. 2007); Powell v. McCormack, 395 U.S. 486, 497 (1969); Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1086 (2011). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate" and "[w]hen an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action." Potter v. Norwest Mortgage, Inc., 329 F.3d 608, 611 (8th Cir. 2003) (quotations omitted); see, Roberts v. Norris, 415 F.3d 816, 819 (8th Cir. 2005); Arizonans for Official English v. Arizona, 520 U.S. 43, 45 (1997).

---

[2] Petitioner asserts that he is Hispanic. (Id. at 15).

3

The ongoing case-or-controversy requirement is no longer met if an event occurs, during the course of the proceedings, which precludes the Court from granting any meaningful relief to the party who initiated the action. See, In re Sec. Life Ins. Co. of Am., 228 F.3d 865, 869–70 (8th Cir. 2000) (citing In re Grand Jury Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir. 1996) ("The existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of federal courts . . . . [I]f during the pendency of an appeal, an event occurs which destroys the court's ability to render the prevailing party any effectual relief whatsoever, the appeal must be dismissed as moot.") (citations and quotations omitted)). If it becomes impossible for the Court to provide any further redress for the claims that have been raised, the case must be dismissed as moot. See, Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990) ("To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable decision.").

This is not to say that a petitioner's release from custody automatically renders moot his habeas Petition. If a petitioner is challenging his criminal conviction, a writ of habeas corpus is not automatically mooted upon his release from custody as habeas relief could still serve the purpose of eliminating some of the "collateral consequences that attached to the conviction as a matter of law." Spencer v. Kenma, 523 U.S. 1, 9 (1998) (citing Carafas v. LaVallee, 391 U.S. 234, 237 (1968)). Such "collateral consequences" include restrictions on the right to engage in certain types of businesses or professions, the right to vote, the right to own a gun, and the right to serve on a jury. See, Id. at 9. "However, a habeas petitioner cannot rely on the collateral consequences of his conviction to save his case from mootness if he is not actually challenging the validity of his conviction." Woodward v. Fondren, No. 8-cv-194 (ADM/JJK), 2008 WL 5214396, at *2 (D. Minn. Dec. 12, 2008).

4

In the present case, Petitioner is not challenging the validity of his conviction. (See, Pet. [Docket No. 1]). Rather, Petitioner is challenging only the length of his term of imprisonment based on his forfeiture of good time credit. (See, Id.).

In the present case, Petitioner seeks an Order of this Court restoring 41 days of good time credit and 180 days of nonvested good time credit so that he may be released from BOP custody sooner than he would be without the restoration of his good time credits. As observed above, however, Petitioner has already been released from BOP custody. Petitioner was in fact released from BOP custody less than a month after he initiated the present action.

Even assuming solely for the sake of argument that this Court found Petitioner's claim to have merit, there is no longer any meaningful relief which this Court could provide. Petitioner sought the restoration of good time credits to hasten his release from BOP custody, but Petitioner has already been released from BOP custody. The present Petition has been rendered moot by Petitioner's release from his term of incarceration. Other Court have reached this same conclusion in circumstances materially similar to the present case. See, e.g., McClain v. Gasele, 12 F.3d 1102 (8th Cir. 1993) (finding moot an inmate's request for the restoration of good time credits because said inmate was released from BOP custody to "parole"); Jackson v. Marques, No. 18-cv-2679 (MJD/LIB), 2019 WL 2375384, at *2 (D. Minn. Apr. 23, 2019), report and recommendation adopted, 2019 WL 2369895 (D. Minn. June 5, 2019); Lourido-Vidal v. Fisher, No. 13-cv-600 (PJS/TNL), 2014 WL 2480164, at *2 (D. Minn. June 3, 2014); Howard v. Hendrix, No. 2:19-cv-113 (KGB/JTR), 2019 WL 10745050, at *2–3 (E.D. Ark. Nov. 5, 2019), report and recommendation adopted, 2020 WL 5775186 (E.D. Ark. Sept. 28, 2020); Miller v. United States, No. 13-cv-2586 (ADM/TNL), 2014 WL 2009022, at *2 (D. Minn. May 16, 2014).

"[I]t does not matter that the Petitioner may still be subject to conditions of [supervised release], and that he may still be returned to prison if he violates those conditions." Gore v. Fondren, No. 7-cv-4425 (ADM/RLE), 2008 WL 4787652, at *5 (D. Minn. Oct. 31, 2008); see, McClain v. Gasele, 12 F.3d 1102 (8th Cir. 1993). Similarly, Petitioner's term of supervised release is not a collateral consequence which saves his case from mootness. See, e.g., Copley v. Keohane, 150 F.3d 827, 830 (8th Cir. 1998); Spencer v. Kemna, 523 U.S. 1, 8–16 (1998); Gore v. Fondren, No. 7-cv-4425 (ADM/RLE), 2008 WL 4787652, at *5 (D. Minn. Oct. 31, 2008); McClain v. Gasele, 12 F.3d 1102 (8th Cir. 1993). Therefore, the present Petition is now moot because there is no longer any live case or controversy to be resolved in the present case.

As the present Petition is now moot, the Court will not consider the merits of Petitioner's claims or render any opinion on those claims as any "[s]uch opinion would be merely advisory and is not permitted under Article III." Walton v. Holinka, No. 7-cv-2121 (MJD/FLN), 2008 WL 495523, at *1 (D. Minn. Feb. 21, 2008); see, Doe v. Nixon, 716 F.3d 1041, 1051 (8th Cir. 2013) ("A federal court has no authority to give opinions upon moot questions or abstract proposition, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.").

### III. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Tejeda-Hurtado's Petition for a Writ of Habeas Corpus, [Docket No. 1], be **DENIED as moot**.

Dated: May 26, 2022                          s/Leo I. Brisbois
                                             Hon. Leo I. Brisbois
                                             U.S. MAGISTRATE JUDGE

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition." A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).